OPINION
{¶ 1} In this appeal, submitted on the record and briefs of the parties, Appellant, James C. Anspach, appeals the judgment of the Geauga County Court of Common Pleas, denying his motion for modification of spousal support and increasing his child support obligation.
 {¶ 2} James and Penny Anspach were married on September 1, 1979, in Newbury, Ohio. Two children were born as issue of the marriage, Lindsay (d.o.b. 11/20/80) and Laurel (2/22/83).
 {¶ 3} On March 19, 2001, James filed a Complaint for Divorce in the Geauga County Court of Common Pleas. Following a trial on the merits, the court filed a judgment entry of divorce on September 6, 2002. The judgment entry found that Lindsay, age 21 at the time of the final decree, was "mentally disabled and incapable of supporting herself" and thus, child support should extend indefinitely beyond the statutory time period. As a result, the judgment ordered James to pay child support in the amount of $298.88 per month "subject to further order of the court." The trial court also found that, due to the duration of the marriage, her age, and the fact that she suffered from multiple sclerosis, Penny was entitled to spousal support in the amount of $700.00 per month for an indefinite period of time, also subject to modification by the court.
 {¶ 4} On September 25, 2002, James timely appealed the trial court's judgment. On January 21, 2003, this court dismissed that appeal, sua sponte, for failure to prosecute.
 {¶ 5} On February 7, 2005, James filed the motion to modify spousal and child support, which is the subject of the current appeal. The matter came for a hearing before the magistrate on January 6, 2006.
 {¶ 6} The magistrate issued her decision on January 25, 2006, finding that James had failed to meet his burden of showing a sufficient change in circumstances to warrant a downward modification in spousal support. The magistrate further found that the child support obligation for Lindsay should be increased to $347.92 per month.
 {¶ 7} James timely filed objections to the magistrate's decision. On May 11, 2006, the trial court overruled James' objections, adopting the magistrate's decision without modification.
 {¶ 8} James timely appealed, raising the following issues on appeal:
 {¶ 9} "[1.] WHETHER THE TRIAL COURT ERRED IN FINDING THAT MRS. ANSPACH'S INCOME DECREASED SINCE THE PARTIES DIVORCED IN 2002 RENDERING THE JUDGMENT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 10} "[2.] WHETHER THE TRIAL COURT'S FAILURE TO CONSIDER MATERIAL EVIDENCE WHICH WAS INTRODUCED AT TRIAL AND MISAPPLICATION OF RELEVANT LAW WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF DISCRETION.
 {¶ 11} "[3.] WHETHER A DISABLED CHILD SHOULD RECEIVE ANY CHILD SUPPORT IF SUCH FUNDS CAUSE HER TO BE DISQUALIFIED FOR BENEFITS THAT ARE OTHERWISE AVAILABLE TO HER AS A DISABLED PERSON."
 {¶ 12} We note, at the outset, that James has failed to comply with App.R. 16(A)(3) in that he has failed to provide "[a] statement of the assignments of error presented for review." In addition, James also failed to comply with App.R. 16(A)(4), which requires that statements of issues presented for review shall contain "references to the assignments of error to which each issue relates." Pursuant to App.R. 12(A)(2), an appellate court "may disregard an assignment of error presented for review if the party * * * fails to argue the assignment of error separately in the brief, as required by App.R. 16(A)." Despite this failure to comply with the appellate rules, we nevertheless conclude that the issues presented enable us to rephrase James' propositions of law into assignments of error, and thus, in the interest of justice, we will address them accordingly.
 {¶ 13} Since James' first and second propositions of law relate to the trial court's decision to continue Penny's spousal support at its prior level they will be treated as a single assignment of error.
 {¶ 14} In his first assignment of error, James argues that the trial court erred and abused its discretion in adopting the magistrate's decision not to modify spousal support, since the magistrate's decision was based upon findings of fact that were either erroneous or against the manifest weight of the evidence.
 {¶ 15} A trial court enjoys broad discretion determining whether or not to modify an existing spousal support order. Mottice v. Mottice
(1997), 118 Ohio App.3d 731, 735; Schultz v. Schultz (1996),110 Ohio App.3d 715, 724. Abuse of discretion "connotes more than an error of law or judgment," rather "it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 16} R.C. 3105.18 is the statutory provision governing the award and modification of spousal support pursuant to divorce and legal separation proceedings. With regard to modification of a spousal support order, R.C. 3105.18(E) provides that a court may not modify an award of spousal support in a divorce decree, unless the circumstances of either party have changed and the decree of divorce specifically contains a provision reserving the court's jurisdiction to modify the award of spousal support. Bowen v. Bowen (1999), 132 Ohio App.3d 616, 628-629;Kingsolver v. Kingsolver, 9th Dist. No. 21773, 2004-Ohio-3844, at ¶ 11; Norris v. Norris, 8th Dist. No. 83547, 2004-Ohio-4072, at ¶ 18. A change in circumstances is defined, but is not limited to "any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses." R.C. 3105.18(F) (emphasis added).
 {¶ 17} Once the trier of fact has determined that a change in circumstances has occurred, the court then must analyze "whether the existing spousal support order should be modified." Leighner v.Leighner (1986), 33 Ohio App.3d, 214, 215 (emphasis sic). In other words, the court reexamines the existing award to determine if it is still appropriate and reasonable. Barrows v. Barrows, 9th Dist. No. 21904, 2004-Ohio-4878, at ¶ 7 (citations omitted). The burden of showing that a reduction in spousal support is warranted is on the party seeking the reduction. Reveal v. Reveal, 154 Ohio App.3d 758, 2003-Ohio-5335, at ¶ 14 (citation omitted).
 {¶ 18} In determining whether or not the existing award remains "appropriate and reasonable under the circumstances," the court's discretion is not unlimited, but is to be guided by its consideration of the factors set forth in R.C. 3105.18(C). DeChristefero v.DeChristefero, 11th Dist. No. 2002-T-0021, 2003-Ohio-2234, at ¶ 15.
 {¶ 19} R.C. 3105.18(C)(1) provides the list of factors the court must consider to determine whether the spousal support award remains appropriate and reasonable. These factors include: (1) the income of the parties from all sources; (2) the earning abilities of the parties; (3) the ages and health of the parties; (4) the parties' respective retirement benefits; (5) the duration of the marriage; (6) the appropriateness of the parties to seek employment outside of the home; (7) the marital standard of living; (8) the education of the parties; (9) the assets and liabilities of the parties; (10) the contribution of either party to the other's education; (11) the cost of education in terms of time and money to the party seeking support (12) the tax consequences of an award of spousal support; (13) the lost income production capacity resulting from the parties' marital responsibilities; and (14) any other factor found relevant by the court.Bandish v. Bandish, 11th Dist. No. 2002-G-2489, 2004-Ohio-3544, at ¶ 15 (citation omitted).
 {¶ 20} In determining whether the change in circumstances warrants a modification of spousal support, the court must set forth the basis of their decision in sufficient detail to allow for proper appellate review, however, the court need not reiterate those factors under R.C.3105.18(C)(1) which remain unchanged from the time of the original award of support. Kucmanic v. Kucmanic (1997), 119 Ohio App.3d 609, 613.
 {¶ 21} James alleged a downward modification of spousal support was warranted for the following reasons: Penny had acquired full-time employment; her ability to work was no longer hindered by a need to care for Lindsay; Penny's filing of bankruptcy allowed her to reduce a "significant number of her monthly expenses"; Lindsay's income from work, in addition to her social security benefits, were sufficient to support her; and that his remarriage has caused his expenses to increase based upon "his need to care for himself, his wife, and his stepchildren."
 {¶ 22} In the instant matter, both parties stipulated as to their gross annual incomes. James' gross income for the purposes of review of the spousal support order was determined to be $39,780 and Penny's was determined to be $16,294.
 {¶ 23} Although the magistrate made several findings of fact supporting her conclusion that a downward adjustment in spousal support was not warranted, one of the factors specifically relied upon by the magistrate was the income of the parties. With respect to this issue, the magistrate made the following factual finding:
 {¶ 24} "Although Ms. Anspach now has full time employment with benefits, her income has actually decreased since the divorce by $2,426 while Mr. Anspach's income has increased by $8,780 since the divorce."
 {¶ 25} James argues that the trial court's adoption of this finding was reversible error, since it was based on an erroneous calculation. Under the circumstances presented herein, we agree.
 {¶ 26} A review of the February 15, 2002 magistrate's decision imposing the original support orders indicates that the magistrate imputed income to Penny in the amount of $18,720 for the purposes of calculating child support. However, for the purposes of determining spousal support, the magistrate instead relied on Penny's actual gross income figure of $11,232, based on her working 24 hours per week at a rate of $9.00 per hour. These findings of fact were adopted by the trial court, in rendering its judgment on September 6, 2002.
 {¶ 27} James correctly points out that the magistrate could have only arrived at the conclusion that Penny's income had decreased by $2,426 by subtracting her current gross income of $16,294 from the gross income of $18,720, imputed to her for the purpose of calculating the originalchild support award.
 {¶ 28} When comparing the gross income figures used in the originalspousal support award, James correctly asserts that Penny's income actually increased by $5,062.
 {¶ 29} With respect to spousal support calculations, courts in Ohio have held that "where a substantial error occurs due to mathematical miscalculations, * * * an abuse of discretion may be shown."Gockstetter v. Gockstetter (Jun. 23, 2000), 6th Dist. No. E-98-078, 2000 Ohio App. LEXIS 2806, at *7; Turckes v. Turckes, 5th Dist. No. 2003CA00052, 2003-Ohio-7279, at ¶ 31; Ott v. Ott, 12th Dist. No. CA2001-09-207, 2002-Ohio-2067, 2002 Ohio App. LEXIS 1991, at *4.
 {¶ 30} A review of the magistrate's decision makes clear that her decision to maintain spousal support at its current level was predicated, in part, on the fact that Penny's income had decreased. Penny correctly points out that a change in income is but one of the relevant factors to be considered by a court when determining whether to modify an order for spousal support under a "totality of the circumstances" analysis. Gallo v. Gallo, 11th Dist. No 2004-L-193,2006-Ohio-873, at ¶ ¶ 34-35. Nevertheless, Penny's current gross income represents a 45 per cent increase over her previous gross income figure, which was used to calculate James' original spousal support obligation. Cf. Barron v. Barron, 5th Dist. No. 2002CA00239, 2003-Ohio-649, at ¶ 28 (finding a sixteen percent overstatement in income was "substantial" enough to warrant reversal of the trial court's award of spousal support).
 {¶ 31} This court has held that when specific objections are filed to a magistrate's decision, the court is required by Rule 53(E)(4)(b) to independently review the decision. An independent review requires that the court, "as the ultimate finder of fact, * * * must make its own * * * independent analysis of the issues and should not adopt the findings of the [magistrate] unless * * * the [magistrate] has properly determined the factual issues * * * and, where the [magistrate] has failed to do so, the court must substitute its judgment for that of the [magistrate]." In reGibbs (Mar. 13, 1998), 11th Dist. No. 97-L-067, 1998 Ohio App. LEXIS 997, at *11-*12 (citation omitted); cf. Perko v. Perko 11th Dist. Nos. 2001-G-2403, 2002-G-2435 and 2002-G-2436, 2003-Ohio-1877, at ¶ 21 ("[a] de novo review * * * is needed only if an appropriate objection is filed by a party.")
 {¶ 32} In the instant matter, James timely objected to the magistrate's factual finding that Penny's income had decreased, based upon this erroneous calculation, prior to the trial court's adoption of this factual finding and entry of judgment in favor of Penny.
 {¶ 33} Under these circumstances, a reversal of this portion of the judgment is in order with a remand to the trial court "to redetermine the spousal support award after adjustment for the corrected income figure" has been made. Barron, 2003-Ohio-649, at ¶ 29.
 {¶ 34} James' first assignment of error has merit.
 {¶ 35} In his second assignment of error, James does not challenge the magistrate's finding that a change in the support amount was warranted, but rather argues that the trial court committed reversible error by allowing for an increase in his support obligation, without considering the effect this modification would have on Lindsay's eligibility to receive Medicaid and other federal benefits. James states that "this is not the result intended by the Court in Castle v. Castle [(1984), 15 Ohio St.3d. 279]."
 {¶ 36} A court's award of child support will not be reversed, absent a showing that the trial court abused its discretion. Booth v. Booth
(1989), 44 Ohio St.3d 142, 144, citing Miller v. Miller (1988),37 Ohio St.3d 71, 74.
 {¶ 37} Castle held that a domestic relations court retains jurisdiction over parties in a divorce, dissolution or separation proceeding to continue or to modify support payments for a mentally or physically disabled child beyond the statutory age of majority.15 Ohio St.3d 279, at paragraph two of the syllabus. The holding inCastle is predicated upon the parent's common-law duty to support "where a child is of weak body or mind, unable to care for itself after coming of age, and remains unmarried and in the parent's home." Id. at 282 (citation omitted). Thus, contrary to James' argument, the intent of theCastle holding is quite the opposite of what he argues, that is, the duty to support remains despite the child's attainment of the age of majority, where the child is unable to support itself.
 {¶ 38} When modifying an existing child support order, a trial court must find that a change of circumstances has occurred. Bright v.Collins (1982), 2 Ohio App.3d 421, 423. In order to determine if a change in circumstances has occurred, the trial court must complete a new child support worksheet, recalculating the amount of support required through the line establishing the actual obligation. R.C.3119.79(A). If the recalculated amount is more than 10 percent less or greater than the amount previously required as child support, it is considered a change in circumstances substantial enough to require modification of the child support amount. Id. The amount calculated in the child support schedules is "rebuttably presumed to be the correct amount of child support due." R.C. 3119.03; Schultz,110 Ohio App.3d at 720. The burden lies with the party challenging the amount calculated under the basic child support guidelines to "provid[e] evidence which demonstrates that the calculated award is unjust, inappropriate or would not be in the best interest of the child." Id. at 721; R.C. 3119.22.
 {¶ 39} In the case sub judice, the amount of calculated child support increased from $298.88 to $347.91. Since this amount exceeds ten percent, there has been a substantial change in circumstances, as defined by R.C. 3119.79(A).
 {¶ 40} James argues that a modification is warranted based upon the testimony of Carey Kleinschmidt, a caseworker from the Geauga County Board of Mental Retardation and Developmental Disabilities, regarding Lindsay's Medicaid benefits. Kleinschmidt testified that Medicaid was a "means tested" benefit, in which the benefit is free until the recipient exceeds the federal benefit rate, otherwise the recipient would have to "spend down" medical expenses from actual income before Medicaid would pay the balance.
 {¶ 41} In considering whether a deviation from the scheduled amount of child support is warranted, a court "may consider" any number of factors which might justify a deviation, including "[t]he financial resources and the earning ability of the child" and "[a]ny other relevant factor." R.C. 3119.23 (F) and (P) (emphasis added).
 {¶ 42} A review of the record reveals that James has introduced no evidence, beyond speculation, that the increase in child support, as awarded, would affect Lindsay's eligibility for Medicaid. Even if we were to assume, arguendo, that the Medicaid "spend down" requirement was a "relevant factor" under R.C. 3119.23 (F) or (P), the court's consideration of these factors is discretionary.
 {¶ 43} Under the circumstances presented herein, we cannot say that the trial court abused its discretion in modifying the child support award.
 {¶ 44} James' second assignment is without merit.
 {¶ 45} For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas is affirmed, in part, reversed, in part, and remanded for proceedings consistent with this opinion.