OPINION
{¶ 1} Theodore Norbut appeals from the trial court's August 24, 2006, judgment entry overruling his objections to a magistrate's decision and retroactively reducing, but *Page 2 
not terminating, his spousal support obligation to his former wife, Margaret Norbut.
 {¶ 2} In four related assignments of error, Theodore contends the trial court abused its discretion in not ordering a more drastic reduction or termination of his support obligation.[1] He asserts that continued spousal support no longer was necessary or appropriate after Margaret became entitled to her marital share of his retirement pension in 1997.
 {¶ 3} The record reflects that the Norbuts married in 1962 and divorced in 1989. At the time of the divorce, Theodore assumed responsibility for all marital debts, and Margaret received, among other things, the marital residence valued at nearly $100,000 and a automobile valued at nearly $10,000 free and clear. Margaret also received a one-half interest in Theodore's federal civil-service pension earned during the marriage. At the time of the divorce, it was anticipated that Theodore would retire in approximately fifteen years. As a result, the trial court ordered him to pay spousal support of $215 per week, or $931.66 per month, for fifteen years. The court "retained jurisdiction" to modify spousal support. R.C. 3105.18(E)(1).
 {¶ 4} Following a change in the law, Theodore took a penalty-free early retirement in January 1997. He subsequently moved to terminate his spousal support obligation in August 1997 after the parties received notice of their respective retirement benefits. Records from the federal Office of Personnel Management reflect that Margaret's share of the retirement benefit in 1997 was $1,556.87 per month. Based on the fact that Margaret received substantial assets and no debt at the time of the divorce *Page 3 
and subsequently began receiving retirement benefits that significantly exceeded the spousal support award, Theodore argued that such support no longer was appropriate. Moreover, he pointed out that the original spousal support award had been intended to provide for Margaret's sustenance until he reached retirement age and began drawing his pension. Because Margaret already had begun receiving her share of the pension due to his early retirement, Theodore argued that the rationale for spousal support no longer existed.
 {¶ 5} A magistrate held hearings on the spousal support issue in December 1997 and May-June 2003.[2] On June 18, 2003, the magistrate filed a decision and order reducing Theodore's spousal support obligation from $931.66 to $800 per month for 1997, 1998, 1999, and 2000. The magistrate reduced spousal support to $700 per month for 2001 and to $600 per month for 2002. For 2003 and forward, the magistrate set spousal support at $700 per month. The trial court approved the modification of spousal support in a July 15, 2004 judgment entry, but refused to make the reduction retroactive to 1997. Instead, the trial court reduced Theodore's support obligation effective May 2003.
 {¶ 6} We reviewed an appeal by Theodore from the trial court's ruling in Norbut v. Norbut, Greene App. No. 2004-CA-87, 2006-Ohio-2130. Therein, we noted that the crux of the appeal was whether the trial court had erred "by modifying, rather than terminating, spousal support, and by failing to make the termination retroactive to 1997." Id. at ¶ 26. We then agreed with the trial court's finding that Margaret's increased income *Page 4 
qualified as a "change in circumstances" for purposes of terminating or reducing Theodore's support obligation. We noted, however, that the trial court had failed to consider all of Margaret's new sources of income, which included her share of Theodore's pension, her own Social Security benefits, financial assistance that she received from her daughter, and income from occasional part-time employment. We also noted an apparent failure by the trial court to consider all relevant factors, including those listed in R.C. § 3105.18, along with the change in circumstances resulting from Margaret's increased income. Finally, we held that the trial court had erred in refusing to make the spousal support reduction retroactive to 1997 based on a mistaken belief that the retroactivity issue was not before it. As a result, we reversed the trial court's judgment and remanded the cause for further proceedings.
 {¶ 7} On remand, the magistrate reviewed the existing record and filed a June 23, 2006 decision and order making the same spousal support reduction for 1997 through 2003 that she had ordered prior to our remand. The trial court approved the magistrate's new decision over Theodore's objections. As a result of the trial court's ruling, his spousal support obligation was reduced from $931.66 per month to $800 per month for 1997, 1998, 1999, and 2000, to $700 per month for 2001, and to $600 per month for 2002. For 2003 and forward, spousal support was set at $700 per month. This timely appeal followed.
 {¶ 8} Theodore's four assignments of error are as follows:
 {¶ 9} "The trial court erred and abused its discretion when it made the same award of spousal support three times notwithstanding that each time it failed to use the correct total incomes for the parties and the income figures used varied so greatly that *Page 5 
such an unchanging support award can only be considered unreasonable, unconscionable, arbitrary and capricious."
 {¶ 10} "The trial court prejudicially erred, violated Mr. Norbut's constitutional rights, and abused its discretion when, in disregard to what the law and statutory factors required, it failed to terminate and/or further decrease Mr. Norbut's spousal support obligation retroactive to the time Mr. Norbut retired because spousal support was no longer necessary, reasonable or appropriate for `sustenance' based on the standard of living during the marriage and the debts apportioned at the time of divorce, and because Mrs. Norbut was enjoying a standard of living well above that during the marriage."
 {¶ 11} "The trial court erred in failing to provide sufficient analysis and detail of its decision regarding spousal support for appellate review."
 {¶ 12} "The trial court's decision was prejudicially based upon erroneous findings of fact and was made contrary to the manifest weight of the evidence."
 {¶ 13} As set forth above, the essence of Theodore's assignments of error, which include twenty-seven "issues" for our review, is that the trial court abused its discretion in making only limited reductions in his spousal support obligation. He argues that the evidence before the trial court justified a termination of support retroactive to August 1997, when he filed his motion and when Margaret became entitled to pension benefits of $1,556.87 per month. Alternatively, he asserts that the evidence justified a greater reduction in spousal support than the trial court ordered. For her part, Margaret argues that the magistrate and the trial court considered the relevant factors on remand and committed no error.
 {¶ 14} Whether to modify a spousal support award is an issue over which a trial *Page 6 
court enjoys broad discretion. McHenry v. McHenry, Montgomery App. No. 20345, 2004-Ohio-4047, T|21. We review a trial court's decision on a motion to modify spousal support for an abuse of discretion, and we will reverse only if the trial court's decision was unreasonable, arbitrary, or unconscionable. Graham v. Graham (1994), 98 Ohio App.3d 396, 399.
 {¶ 15} A trial court employs a two-step process to decide a motion for modification of a spousal support award. Seagraves v. Seagraves (April 19, 1996), Montgomery App. No. 15588. First, it must find a substantial change in circumstances that was not contemplated at the time of the prior order. Id. Next, it must examine the existing order in light of the changed circumstances, considering whether spousal support is still appropriate and reasonable and, if so, in what amount. Id. When deciding whether the existing order should be modified, a trial court must consider all relevant factors, including those listed in R.C. §3105.18(C).[3] Norbut v. Norbut, Greene App. No. *Page 7 
2004-CA-87, 2006-Ohio-2130, ¶ 30.
 {¶ 16} Following our remand in the present case, the magistrate and the trial court again found a substantial change in the parties' circumstances. We agree with this determination. As we pointed out in our prior ruling, Margaret's increased income alone constituted a substantial change in circumstances. Moreover, it was not contemplated at the time of the initial spousal support award that Margaret would begin drawing her share of Theodore's pension during the fifteen-year term of his support obligation. This is so because the parties did not anticipate Theodore being able to retire until at least fifteen years after their divorce, at which time the spousal support award would expire and Margaret would begin receiving her share of the pension in its place. In reality, however, Theodore was permitted to take a penalty-free early retirement in 1997, which resulted in Margaret becoming entitled to her share of his pension approximately eight years after the divorce while still receiving spousal support. Therefore, Theodore's unanticipated ability to take early retirement also supports a finding of changed circumstances.
 {¶ 17} The primary issue on appeal is whether any spousal support award remained appropriate and reasonable after Margaret became entitled to her share of Theodore's pension in 1997. Having considered the totality of the circumstances, including the factors set forth in R.C. § 3105.18(C), we believe the trial court abused its discretion in making only limited reductions in Theodore's support obligation retroactive *Page 8 
to 1997. In our view, the trial court should have terminated spousal support effective with the filing of Theodore's motion for such relief in August 1997.
 {¶ 18} In reaching the foregoing conclusion, we have conducted our own review of the R.C. § 3105.18(C) factors, which include (1) the income of the parties from all sources, (2) the parties' relative earning abilities, (3) the ages and physical, mental, and emotional conditions of the parties, (4) the retirement benefits of the parties, (5) the duration of the marriage, (6) the extent to which it would be inappropriate for a party who is the custodian of a minor child to seek work outside the home, (7) the standard of living established during the marriage, (8) the relative extent of the parties' educations, (9) the parties' relative assets and liabilities, (10) the contribution of each party to the education, training, or earning ability of the other party, (11) the time and expense needed for the spouse seeking support to acquire education, training, or job experience, (12) the tax consequences of a spousal support award, (13) the lost income production capacity of either party that resulted from that party's marital responsibilities, and (14) any other factor that is relevant and equitable.
 {¶ 19} Some of the foregoing factors have little applicability in the present case. For example, the magistrate found that there were no minor children during the relevant years, neither party contributed to the education, training, or earning ability of the other, neither party will be acquiring any additional education, training, or job experience, tax consequences are not a significant consideration, and neither party lost income production capacity due to marital responsibilities.
 {¶ 20} Other factors are more relevant. The magistrate found that the parties' marriage lasted 27 years and they lived a "middle-class modest life" during that time. *Page 9 
The magistrate also found that both parties were in relatively good health and had income potential, although Theodore's earning ability was higher. With regard to the parties' incomes from all sources and retirement benefits, the magistrate took into account Theodore's income from consulting work and his pension as well as Margaret's income from the pension, spousal support, and her Social Security. The magistrate made no mention, however, of the substantial income Margaret receives from her daughter, who began residing with her in 1994. Hearing testimony established that this additional income amounts to approximately $750 per month. The magistrate also considered the parties' assets and liabilities, noting that Margaret had substantial debts and expenses which militated in favor of her need for continued spousal support.
 {¶ 21} In Billingham v. Billingham (Feb. 16, 2001), Montgomery App. No. 18403, we recognized that "each of the factors listed in R.C. §3105.18(C)(1) relates, either directly or indirectly, to the obligee spouse's need or the obligor spouse's ability to pay" support. Indeed, while the focus of the statute is on whether spousal support is appropriate and reasonable, proving a need for support is essential in most cases. Id. We noted in Billingham that "the term `need' is an elastic concept that differs from case to case, and that encompasses more than just ensuring that the obligee spouse has the basic necessities of food, clothing, and shelter." Id. We reasoned that the proper inquiry was whether the obligee spouse required continued spousal support to sustain the standard of living that existed during the marriage. If the obligor spouse had the ability to pay support commensurate with this standard of living, then continued support would be appropriate and reasonable under the statute. Id.
 {¶ 22} In the present case, the record supports the magistrate's conclusion that *Page 10 
the parties lived a frugal, modest lifestyle during the marriage. They rarely vacationed and lacked cable television. At the time of the divorce, Margaret received the majority of the marital assets, which included a residence and automobile, and no debt. Margaret also had other assets that included a $45,000 inheritance and stocks. Theodore received a smaller share of the marital assets and assumed responsibility for paying all marital debts. As noted above, the trial court also ordered him to pay spousal support of $931.66 per month for fifteen years, after which time Margaret was expected to begin receiving her share of his pension.
 {¶ 23} When Theodore took advantage of an unanticipated opportunity for early retirement in 1997, he moved to terminate his support obligation. Because Margaret received substantial assets and no debt at the time of the divorce and subsequently became entitled to pension benefits of approximately $1,500 per month, Theodore contended that spousal support no longer was necessary or appropriate. The record reveals that following Theodore's 1997 motion, which remained pending for several years, Margaret increased her spending and incurred significant debts for, among other things, the renovation of her home, the purchase of an SUV and another vehicle, the purchase of two Florida time-shares, and ultimately the purchase and remodeling of a condominium into which she moved with her daughter. During the 2003 hearing on Theodore's motion, Margaret conceded that her discretionary expenses "shot up" when she began receiving the pension income in addition to spousal support after Theodore's 1997 retirement.
 {¶ 24} The record persuades us that Margaret realized an income windfall beginning in 1997 due to her receipt of pension benefits and spousal support, and she *Page 11 
increased her spending accordingly. The record also persuades us, however, that neither the trial court nor the parties intended for Margaret to receive both sources of income simultaneously. As explained above, the original spousal support award was to provide for Margaret's sustenance for fifteen years until Theodore reached retirement age and began drawing his pension. At that point, spousal support would terminate and Margaret would receive pension income in its place. Because Margaret became entitled to her approximately $1,500 per month pension seven years early due to Theodore's early retirement, the rationale for spousal support of $931.66 per month no longer existed when he filed his motion in August 1997. Margaret's receipt of spousal support after August 1997 is even less appropriate and reasonable when considering the additional $750 per month in income that she receives from her daughter and her later receipt of Social Security benefits of roughly $300 per month. To the extent that Margaret has any need for spousal support after August 1997, the need is fairly attributable to her attainment of a standard of living above what the parties enjoyed during the marriage.
 {¶ 25} For the reasons set forth above, we conclude that it was neither appropriate nor reasonable for the trial court to continue Theodore's spousal support obligation after the filing of his August 8, 1997 motion to terminate support. The trial court's award of spousal support beyond that date constituted an abuse of discretion. Accordingly, we sustain Theodore's assignments of error to the extent set forth above.
 {¶ 26} The trial court's August 24, 2006 judgment entry is reversed, and Theodore's spousal support obligation is hereby ordered terminated retroactive to August 8, 1997. *Page 12 
GRADY and WALTERS, JJ., concur.
(Hon. Sumner E. Walters, retired from the Third District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
[1] For purposes of clarity and convenience, we will refer to the parties by their first names.
[2] A lengthy delay occurred due to federal litigation regarding the distribution of Theodore's pension benefits to Margaret.
[3] Under his second assignment of error, Theodore argues that we should apply the version of R.C. § 3105.18 that was in effect when the parties divorced in 1989 rather than the amended version that took effect in April 1991, more than six years before he moved to terminate or reduce his support obligation. The main difference between the two versions is that the pre-amendment version used the various factors set forth therein to determine whether support was "necessary," whereas the post-amendment version uses them to determine whether support is "appropriate and reasonable." While this broader standard is not based solely on a showing of need, we have recognized that "[n]eed is still, of course, an important factor in considering what is appropriate and reasonable." Tinney v. Tinney, Montgomery App. No. 19906, 2004-Ohio-1160,1J20. In the present case, Theodore argues that applying the amended version of R.C. § 3105.18 to him would violate his equal-protection rights. Although Theodore raised this constitutional argument below, the trial court did not address it and Margaret has not briefed it on appeal. In any event, based on our belief that the trial court should have terminated Theodore's spousal support obligation retroactive to August 1997 even under the amended version of the statute — which includes the broader "appropriate and reasonable" language that is more favorable to Margaret-we need not resolve the constitutional argument he raises. See Hall China Co. v. Public UtilitiesCommission (1977), 50 Ohio St.2d 206, 210 (recognizing "that constitutional issues should not be decided unless absolutely necessary"). For the reasons set forth herein, we conclude that he is entitled to retroactive termination of his support obligation under either version of the statute. *Page 1