[Cite as *Stevens v. Stevens*, 2018-Ohio-2662.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| CYNTHIA L. STEVENS | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27761 |
| | : | |
| v. | : | Trial Court Case No. 08-DR-1094 |
| | : | |
| CHARLES E. STEVENS, JR. | : | (Domestic Relations Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 6th day of July, 2018.

. . . . . . . . . . .

MICHAEL B. MILLER, Atty. Reg. No. 0079305, 2233 Miamisburg-Centerville Road, Dayton, Ohio 45459
        Attorney for Plaintiff-Appellee

ANNE HARVEY, Atty. Reg. No. 0054585, 345 North Main Street, Unit 2, Springboro, Ohio 45066
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Charles E. Stevens, Jr., appeals from a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, which denied his motion to reduce or terminate spousal support payable to his former wife, Cynthia L. Stevens, and/or to terminate his obligation to maintain a life insurance policy payable to her. For the following reasons, the judgment of the trial court will be reversed, and the matter will be remanded for further proceedings.

{¶ 2} The parties were married for more than 32 years, and they have three children, all of whom were adults by the time of the divorce. The parties divorced in March 2010, when they were both in their early fifties. At the time of the divorce, Mr. Stevens had worked as a civilian at Wright Patterson Air Force Base (WPAFB) for more than 25 years. The divorce decree divided Mr. Stevens's pension as well as the parties' marital assets and liabilities; additionally, Mr. Stevens was ordered to pay spousal support and to maintain life insurance with Mrs. Stevens as the beneficiary.

{¶ 3} In 2014, Mr. Stevens retired from WPAFB, and both parties began to receive pension benefits. In June 2014, he filed a motion to terminate or modify his spousal support and/or to eliminate the requirement that he maintain life insurance, based on his retirement. Shortly thereafter, however, Mr. Stevens accepted new employment in Florida, and he withdrew his motion.

{¶ 4} In May 2016, after Mr. Stevens had left his employment in Florida, Mr. Stevens filed a new motion to reduce or terminate his spousal support obligation and/or to eliminate the requirement that he maintain life insurance with Mrs. Stevens as the beneficiary. In support of his motion, he argued that his recent retirement from WPAFB

and his decision to "permanently retir[e]" from other employment after leaving his job in Florida constituted a significant change of circumstances, and that his reduced income justified a modification in spousal support.

{¶ 5} A magistrate conducted a hearing on October 25, 2016. Following the hearing, the magistrate denied Mr. Stevens's motion; Mr. Stevens filed objections. On October 3, 2017, the trial court filed a Decision and Judgment overruling the objections and denying Mr. Stevens's motion on several grounds. It also clarified the divorce decree concerning any perceived ambiguity as to the extent to which the court had retained jurisdiction over spousal support; the court found that it had not retained jurisdiction over spousal support generally, but only as to increases that might be warranted by certain circumstances.

{¶ 6} Mr. Stevens appeals from the trial court's judgment. His brief sets forth several arguments and, although they are not styled as assignments of error, we will treat them as such. Because the issues are related, we will address them together.

### *Standard of Review*

{¶ 7} A trial court has the authority to modify the amount of spousal support if the court determines that "the circumstances of either party have changed," and the divorce decree contains a provision authorizing the court to modify the amount or terms of spousal support. R.C. 3105.18(E). A change of circumstances "includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses, or other changed circumstances so long as * * * (a) [t]he change in circumstances is substantial and makes the existing award no longer reasonable and appropriate [and] (b) [t]he change in circumstances was not taken into

account by the parties or the court as a basis for the existing award when it was established or last modified * * *." R.C. 3105.18(F)(1). "The burden of showing that a reduction of spousal support is warranted is on the party who seeks the reduction." *Bohme v. Bohme*, 2d Dist. Montgomery No. 27258, 2017-Ohio-1190, ¶ 9, quoting *Reveal v. Reveal*, 154 Ohio App.3d 758, 2003-Ohio-5335, 798 N.E.2d 1132, ¶ 14 (2d Dist.).

*Analysis*

{¶ 8} Mr. Stevens's arguments challenge, on various bases, the trial court's finding that a modification of spousal support was not warranted. Specifically, Mr. Stevens argues that the trial court erred in concluding that the language of the divorce decree limited the court's jurisdiction only to consideration of additional or increased spousal support, and that the trial court erred in finding that 1) no change of circumstances had occurred; 2) Mr. Stevens's retirement was "contemplated" at the time of the divorce; 3) Mr. Stevens voluntarily retired; and 4) the current spousal support was still appropriate.

{¶ 9} With respect to spousal support, the final judgment and decree of divorce provided:

I. SPOUSAL SUPPORT

The husband shall pay to the wife, as and for spousal support, commencing January 1, 2010, the sum of $3,000.00 per month, until such time as either party dies, the wife remarries, or she cohabitates with an unrelated member of the opposite sex who provides significant financial support. * * *

* * *

The Court shall retain jurisdiction as to the amount and duration of spousal

support. However, in order to authorize further support the Court must find that there has been a significant change in one or more of the following: A) employment status; B) income levels of the parties; or C) health of the parties.

{¶ 10} The section on spousal support also required Mr. Stevens to maintain a life insurance policy in the amount of $150,000, payable to Mrs. Stevens, as long as he had an obligation to pay spousal support, and stated that the issue of spousal support would be subject to the continuing jurisdiction of the Court if either party obtained relief in bankruptcy from any obligation that would affect the parties' property division or any other obligation owed under the divorce decree.

{¶ 11} At the time of the divorce, Mr. Stevens had worked as a civilian at WPAFB for more than 25 years. With respect to Mr. Stevens's pension from WPAFB, the decree stated that the parties agreed that Mrs. Stevens was entitled to a marital share of Mr. Stevens's Civil Service Retirement System account and that Mrs. Stevens's marital share was 50 percent.[1]

{¶ 12} In his motion to terminate or modify spousal support, Mr. Stevens asserted that there had been a significant change of circumstances in that he had retired from WPAFB, which triggered the payment of pension benefits for both parties and a reduction of his income.

{¶ 13} The following evidence was presented at the hearing.

{¶ 14} The parties divorced in 2010, and Mr. Stevens remarried in 2012. In

---

[1] Because Mr. Stevens worked at WPAFB for several more years after the divorce, Mrs. Stevens ultimately received less than 50 percent of the total pension payments, although she received 50 percent of the marital share.

2014, Mr. Stevens retired from his long career as an engineer at WPAFB; he was fully vested in his retirement plan at that time. Shortly after his retirement, Mr. Stevens moved to Florida when his wife was transferred for her job, and he accepted employment with a large, international company. However, Mr. Stevens found that the work and the hours and travel of his new position were very demanding, and he testified that he left this employment in June 2016 because of his "health, age, and stress levels." Mr. Stevens had experienced long-term high blood pressure and foot problems. His blood pressure medication dosage had increased since the time of the divorce. Although there was no testimony that his medical condition or physical health had changed in any significant way since the divorce, he stated that his health issues "motivated" him to retire.

{¶ 15} At the time of the divorce, Mr. Stevens had earned approximately $118,000 per year at WPAFB. After his retirement, he received approximately $47,000 per year from his pension; because of his participation in the Civil Service Retirement System, he was not eligible for Social Security. Mr. Stevens earned about $166,000 per year with the company in Florida; thus, his total income during that period was approximately $213,000 per year. He had not obtained any other employment at the time of the hearing.

{¶ 16} Mr. Stevens and his wife built a house in Melbourne, Florida, valued at approximately $675,000; they have a mortgage on the property. He testified that the monthly expenses for the household are approximately $7,400, of which he pays about $3,000.

{¶ 17} Mrs. Stevens earned approximately $47,000 per year from her employment at the time of the hearing; she had earned approximately $28,000 at the time

of the divorce. Her income had increased since the divorce due to a promotion and cost-of-living increases. Additionally, at the time of the hearing, she received $36,000 per year in spousal support and approximately $29,000 per year from Mr. Stevens's pension. Thus, her total annual income was approximately $112,000.

{¶ 18} Mrs. Stevens had been awarded the marital home in the parties' property distribution; she later sold it and purchased a smaller house, on which she had no mortgage. Her current house was valued at about $165,000, which was roughly the same value as the marital home. Mrs. Stevens's testimony suggested that she lives comfortably, but not extravagantly, and that she saved a significant amount of her income ($500 per week) for retirement. She estimated her monthly expenses to be $5,222. She had a total of $125,600 in retirement savings at the time of the hearing, and she was "concerned" about her retirement. She testified that she would not be able to support herself without the spousal support payments from Mr. Stevens.

{¶ 19} Mr. Stevens's primary argument was that there had been a change of circumstances supporting a modification or termination of spousal support (including the life insurance provision) in that he had retired since the divorce, his income (from his pension) was less than it had been when he was working, and Mrs. Stevens's income had increased. He asserted that his retirement, though "contemplated" and "foreseeable" at the time of the divorce, was "not taken into account," *see* R.C. 3105.18(F)(1), because he was still working at that time.

{¶ 20} The magistrate found that the divorce decree had contemplated Mr. Stevens's retirement. "At the time of the divorce, Mr. Stevens was 53 years old and Mrs. Stevens was 52 years old, ages where people are typically approaching the end of their

careers rather than the beginning, and yet, the court ordered spousal support for an indefinite term." The trial court agreed with this conclusion in finding no basis for a modification of spousal support.

{¶ 21} We agree with Mr. Stevens that his retirement, though "contemplated," was "not taken into account" at the time of the divorce, as provided by R.C. 3105.18(F)(1). For example, the spousal support award did not account for the fact that his income would be significantly reduced at the time of his retirement. The spousal support award was based -- appropriately – on his employment income at the time of the decree; it could not, at that time, have been based on the parties' incomes from the pension, because Mr. Stevens was not yet retired. The fact that the retirement was foreseeable and "contemplated" at the time of the divorce did not mean that the changes to both parties' incomes brought about by Mr. Stevens's actual retirement could not constitute a change of circumstances or warrant a possible modification of spousal support. *See Bixler v. Bixler*, 12th Dist. Clermont No. CA2016-12-081, 2017-Ohio-7022, ¶ 23, citing "[u]ncodified" section 4 of 2011 Am.H.B. No. 461 ("the 'change in circumstances' must be circumstances that were not taken into account by the parties or the court when the award was set or last modified, whether or not such circumstances were otherwise contemplated or foreseeable."); *Walpole v. Walpole*, 8th Dist. Cuyahoga No. 102409, 2015-Ohio-3238, ¶ 14 (the change in circumstance – husband's retirement – was "not taken into account" by the parties or the court as a basis for the existing spousal support award when it was established, even though husband's retirement was foreseeable).

{¶ 22} Mr. Stevens also argues that the trial court erred in concluding that his retirement and reduction in income was "voluntarily." Although the magistrate did not

specifically address the relevance of Mr. Stevens's alleged health issues, the trial court found that Mr. Stevens retired "voluntarily," that he was able to work, and that no evidence was offered to support the conclusion that Mr. Stevens could not work due to a medical condition.

{¶ 23} "[R]etirement, whether voluntary or involuntary, may amount to a substantial change in circumstances. However, we have previously held that when a voluntary early retirement is taken, any resulting decrease in income provides a basis for modification of spousal support only 'if it was not done in an attempt to avoid a court ordered obligation to an ex-spouse.' " *Bishop v. Bishop*, 2d Dist. Montgomery No. 26397, 2015-Ohio-2711, ¶ 20, citing *Chepp v. Chepp*, 2d Dist. Clark No. 2008 CA 98, 2009-Ohio-6388, ¶ 10. (Other citation omitted.) "In other words, 'if a party retires with the intent of defeating the spousal support obligation, the retirement is considered "voluntary underemployment," and the party's pre-retirement income is attributed to that party.' " *Id.*, quoting *Chepp* and others.

{¶ 24} In this case, there was no evidence to support, and the trial court did not find, that Mr. Stevens left his employment at WPAFB to "defeat" his spousal support obligation. He had worked for more than 30 years and was two years beyond his eligibility to retire when he decided to do so. As such, while the trial court correctly found that Mr. Stevens was voluntarily retired (i.e., he was not forced to retire), it incorrectly inferred from this fact that his retirement and his resulting change in income could not form a basis for a change of circumstances and a modification of the spousal support award. The trial court did not impute income to Mr. Stevens as if he were voluntarily underemployed, and we express no opinion as to whether such action would be

appropriate, but voluntary retirement and underemployment are not synonymous, as the trial court's judgment seems to suggest.

{¶ 25} If a substantial change in circumstances has occurred, the trial court must then examine the existing order in light of the changed circumstances, considering whether spousal support is still appropriate and reasonable and, if so, in what amount. *Bishop* at ¶ 21, citing *Norbut v. Norbut*, 2d Dist. Greene No. 06-CA-112, 2007-Ohio-2966, ¶ 15. When deciding whether the existing order should be modified, a trial court must consider all relevant factors, including those listed in R.C. 3105.18(C)(1). *Id.* These factors include: the income of the parties from all sources, including, but not limited to, income derived from a property division; the relative earning abilities of the parties; the ages and the physical, mental, and emotional conditions of the parties; their retirement benefits; the duration of the marriage; the standard of living of the parties established during the marriage; the relative extent of education of the parties; and the relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties.

{¶ 26} Mr. Stevens earned approximately $118,000 at the time of the divorce, when he worked at WPAFB. Although he was briefly employed with a private company after his retirement from WPAFB, he was not employed at the time of the hearing. Thus, when his motion for a modification or termination of spousal support was being considered by the trial court, Mr. Stevens had incurred a reduction of his income of approximately $71,000 since the time of the divorce and was receiving approximately $47,000 per year from his pension. He was paying $36,000 per year in spousal support.

{¶ 27} Mrs. Stevens's income had increased to approximately $47,000 per year,

and she received almost an additional $29,000 per year from Mr. Stevens's pension, plus spousal support. Thus, her total income was approximately $112,000.

{¶ 28} The parties did have other investment income, the amount of which was not established, and this income must be considered; however, the extent of the parties' assets at the time of the divorce decree was apparent from the decree, and there is no evidence that any investment income had drastically increased or decreased or that it would impact the disparity in the parties' income at the time of the motion. Based on these factors, the trial court abused its discretion in concluding that there had not been a change of circumstances.

{¶ 29} Mr. Stevens also argues that the trial court erred in interpreting the final judgment and decree of divorce to authorize *increases* in spousal support, but not decreases. This argument relates to the language in the decree that, "in order to authorize *further support"* the trial court must find a significant change in employment status, income levels of the parties, or health of the parties. (Emphasis added.) Mr. Stevens concludes that "there [was] no purpose of retaining jurisdiction * * * except to terminate or suspend" spousal support. On the other hand, Mrs. Stevens argues and the trial court found that "further support" meant *additional* support, and that the court did not retain jurisdiction to reduce or eliminate spousal support.

{¶ 30} The court found that the language in the divorce decree regarding the circumstances in which the court could "authorize further support" was ambiguous, and it clarified the provision as follows:

[T]he Court finds that this language *limits* the jurisdiction of the Court.

This limitation on jurisdiction means that in the event of these three

circumstances [significant change in employment status, income levels or health], the Court is authorized to order *additional* spousal support.

(Emphasis added.)

{¶ 31} Whether a divorce decree is ambiguous is a question of law, which an appellate court reviews de novo; if we agree that there is an ambiguity, the trial court's clarification is reviewed for abuse of discretion. *Blair v. Blair*, 3d Dist. Paulding No. 11-15-04, 2016-Ohio-256, ¶ 13; *see also Kidd v. Alfano*, 2016-Ohio-7519, 64 N.E.3d 1052, ¶ 30 (2d Dist.), citing *Juhas v. Juhas,* 2d Dist. Montgomery No. 26186, 2014-Ohio-5364, ¶ 18. "Ohio law clearly establishes that a judgment may be interpreted if it is ambiguous. If there is good faith confusion over the interpretation to be given to a particular clause of a divorce decree, the trial court in enforcing that decree has the power to hear the matter, clarify the confusion, and resolve the dispute." (Citations omitted.) *Quisenberry v. Quisenberry*, 91 Ohio App.3d 341, 348, 632 N.E.2d 916 (2d Dist.1993). *Accord Landry v. Landry*, 2017-Ohio-564, 85 N.E.3d 313, ¶ 7 (2d Dist.).

{¶ 32} As discussed above, the paragraph in question from the divorce decree states:

The Court shall retain jurisdiction as to the amount and duration of spousal support. However, in order to authorize further support the Court must find that there has been a significant change in one or more of the following: A) employment status; B) income levels of the parties; or C) health of the parties.

{¶ 33} We do not find this provision to be ambiguous. The first sentence broadly and clearly retains jurisdiction over spousal support. The second sentence limits the

situations in which "further" (increased or additional) spousal support will be considered, but it cannot reasonably be read to detract or limit the broad retention of jurisdiction set forth in the first sentence. In other words, given the broad retention of jurisdiction in the first sentence, the statement which restricts the bases for an award of "further" spousal support cannot reasonably be interpreted to state that only increases in spousal support would be considered by the court, which is how the court interpreted it. The trial court erred in interpreting this provision as it did. And in this case, where no "further support" was sought, the second sentence was inapplicable.

{¶ 34} In sum, there was no ambiguity in the divorce decree as to the trial court's retention of jurisdiction over the issue of spousal support. Moreover, the evidence established that the parties' incomes had substantially changed since the time of the divorce, to an extent not taken into account at the time of the divorce. Mr. Stevens's income exceeded his spousal support obligation by only $11,000 per year, while Mrs. Stevens had total income of $112,000. Absent a finding that Mr. Stevens retired for the purpose of defeating his spousal support obligation or other evidence about the income and expenses of the parties, this result was not equitable or reasonable.

{¶ 35} Mr. Stevens's arguments, which we construe as assignments of error, are sustained.

### Conclusion

{¶ 36} The judgment of the trial court will be reversed, and the matter will be remanded for further proceedings.

. . . . . . . . . . . .

WELBAUM, P.J. and TUCKER, J., concur.


Copies mailed to:

Michael B. Miller
Anne Harvey
Hon. Denise L. Cross